Argued and submitted March 2, affirmed August 3, 1988

In the Matter of the Compensation of
Henry P. Ritz, Claimant.
RITZ,
*Petitioner,*

*v.*

OREGON TITLE INSURANCE et al,
*Respondents.*

(WCB No. 85-12593; CA A44221)

758 P2d 390

Robert K. Udziela, Portland, argued the cause for petitioner. With him on the brief was Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Edward C. Olson, Portland, argued the cause and filed the brief for respondents.

Before Warden, Presiding Judge, and Joseph, Chief Judge, and Van Hoomissen, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Claimant seeks review of the Workers' Compensation Board's order affirming the referee's denial of compensation. The sole issue is whether claimant was acting in the course of his employment when he was injured in a fire. We review *de novo* and affirm.

The referee considered the matter on these stipulated facts:

"On June 23, 1985, [claimant] was President of the Oregon Title Insurance Company, the employer in this case. [Claimant] was also a member of the Board of Directors of a trade association called the Oregon Land Title Association, and his company was a member of that association.

"A meeting of the Board of Directors of the Oregon Land Title Association was scheduled for the Kah-Nee-Ta Resort early on June 24, 1985, and [claimant] traveled to the Kah-Nee-Ta Resort area on June 23, 1985[,] for the purpose of being present at the meeting of the Board of Directors early the following morning. His expenses for attendance at the meeting were paid by his employer, and [claimant] would testify that his presence * * * and his company's membership in the association was a benefit to his employer * * *. [The] Vice-President-Secretary of [employer] was also scheduled to attend. The purpose of the * * * Association is to exchange information between member companies, and to address problems common to the members * * * in a coordinated way.

"After arriving at the Kah-Nee-Ta Resort, * * * it came to [claimant's] attention that a grass fire was burning in an area quite close to the Kah-Nee-Tah [*sic*] Resort buildings. He went to the dining room and saw the fire burning towards the lodge, which is a wooden building. Out of concern that the fire created an emergency and a threat to the Kah-Nee-Ta Resort and its occupants, [claimant] joined with several other people who were employees of the Kah-Nee-Ta Resort in attempting to suppress the fire. Due to a sudden shift in the wind and change in the direction of the fire, [claimant], and at least six other persons, were trapped by the fire, and in an attempt to escape this predicament, [he] was badly burned * * *.

"There were approximately 100 guests of the hotel in the area around the swimming pool."

An exhibit, to which the parties also stipulated, indicates that the resort management safely evacuated all guests

from the buildings and grounds and directed them to the parking lot. Eyewitnesses described the fire as "tree exploding" and "fast moving." Ultimately, 185 firefighters were used to control the blaze, which consumed more than 900 acres of range land.

The referee sustained the denial on the grounds that claimant's voluntary "untrained and unskilled" participation in the firefighting to save buildings was unreasonable and that his injuries did not arise out of or in the course of his employment. The Board adopted the referee's order and affirmed.

■ Claimant first argues that he is entitled to compensation under the traveling employe rule, because his firefighting activity was reasonable. Generally, traveling employes are considered to be within the scope of employment while they are away from their homes, except when they engage in a distinct departure from that employment. *Slaughter v. SAIF,* 60 Or App 610, 615, 654 P2d 1123 (1982); *Simons v. SWF Plywood Co.,* 26 Or App 137, 143, 552 P2d 268 (1976). Injuries are compensable only when they result "from activities reasonably related to the claimant's travel status." *Slaughter v. SAIF, supra,* 60 Or App at 616.

■ Claimant was not injured as a result of being trapped in the hotel or while escaping to safety but, rather, when he voluntarily left the lodge to fight the fire. We have held that injuries are compensable under the traveling employe rule if they arise from the activities of passing time in a tavern, *Slaughter v. SAIF, supra,* from traveling as a passenger from an airport to a motel, *Simons v. SWF Plywood Co., supra,* and from consuming alcohol during business related activities, coupled with the use of a hotel's recreational facilities. *Beneficiaries of McBroom v. Chamber of Commerce,* 77 Or App 700, 713 P2d 1095, *rev den* 301 Or 240 (1986).[1] Those activities were held to be reasonable, because they are typical of activities associated with traveling and doing business. That cannot be said about fighting a fire, at least when one elects to leave a building to encounter the danger. Assuming, without deciding, that claimant was in fact traveling in the course of his employment, we hold that firefighting was not reasonably related to

---

[1] We need not reconsider here some (possibly too) broad language in *McBroom.* 77 Or App at 704.

his travel status. Therefore, he was engaged in a distinct departure from his employment when he was injured. The injuries lack a sufficient "unitary work-connection." *Rogers v. SAIF*, 289 Or 633, 642, 616 P2d 485 (1980).

Claimant contends, alternatively, that his injuries are compensable under a rescue or emergency doctrine, and he urges us to adopt Larson's theory of compensability:

> "Any emergency or rescue activity is within the course of employment if the employer has an interest in the rescue. Injury incurred in the rescue of a stranger is compensable if the conditions of employment place claimant in a position which requires him by ordinary standards of humanity to undertake the rescue." 1A Larson, *Workers' Compensation Law* 5-405, § 28.00 (1985).

We need not decide whether to adopt that theory, because claimant has failed to prove that it is applicable under the facts of this case.

■ Claimant does not argue that employer had an interest in the rescue of the resort buildings. Absent that interest, an emergency must involve grave danger to life or persons and not merely to property. 1A Larson, *Workers' Compensation Law* 5-432, § 28.24 (1985). Claimant contends that he acted out of a concern for the safety of the resort guests. Although there is evidence that the fire was spreading quickly, that 100 guests were around the swimming pool and that one of them expressed a fear for his safety, the record does not establish that the guests were near the fire or that claimant had knowledge that anyone was in imminent danger when he embarked on his firefighting effort. Instead, the evidence shows that the guests were timely and safely evacuated to the parking lot. Claimant has failed to carry his burden of proving that his firefighting efforts were directed at the rescue of persons and not property.[2] Accordingly, we hold that his injuries were not sustained out of or in the course of his employment.

Affirmed.

---

[2] Claimant cites *O'Leary v. Brown-Pacific-Maxon*, 340 US 504, 71 S Ct 470, 95 L Ed 483 (1951), for the proposition that his injuries are compensable under the rescue doctrine. The United States Supreme Court upheld compensation under the Long-shoremen's Act to a worker who drowned in an attempt to rescue two drowning people. That holding is consistent with the rule that the rescue must involve an emergency endangering life or person and not property.